**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALI AL-AHMED, | Case No. 1:20-cv-04982-VEC |
| Plaintiff, | |
| v. | |
| TWITTER, INC., | |
| Defendant. | |

**DEFENDANT TWITTER, INC.'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT, OR ALTERNATIVELY, TO TRANSFER VENUE**

Benjamin Berkowitz
Khari J. Tillery
Anjali Srinivasan
Rylee Kercher Olm
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

Alice K. Jump
REAVIS PAGE JUMP LLP
41 Madison Avenue
41st Floor
New York, NY 10010
Telephone:  212-763-4100
Facsimile:  212-763-4141

*Attorneys for Defendant*
*TWITTER, INC.*

1538383

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      Al-Ahmed fails to establish personal jurisdiction over Twitter..............................2

                1.      The Court lacks specific jurisdiction under CLPR § 302(a)(1). ..................2

                2.      The Court lacks specific jurisdiction under CLPR § 302(a)(3). ..................3

                3.      Personal jurisdiction would not comport with Due Process. ......................5

        B.      Al-Ahmed fails to establish Article III standing to pursue claims against
                Twitter related to the alleged 2014-2015 KSA espionage. ......................................5

        C.      Most of the FAC's causes of action should be dismissed as time-barred...............8

        D.      Twitter is not vicariously liable for its rogue employees' misconduct...................9

        E.      CDA Section 230(c)(1) bars Al-Ahmed's account suspension-related
                claims. .............................................................................................................11

        F.      Al-Ahmed cannot state a Free Speech claim against Twitter. ..............................13

        G.      Al-Ahmed's fraudulent inducement claim fails to satisfy Rule 9(b)'s
                heightened pleading requirement.........................................................................14

        H.      Al-Ahmed fails to state a claim that Twitter violated his privacy. .......................15

        I.      Al-Ahmed fails to plead facts necessary to support his negligent hiring,
                supervision, and retention claim and his reckless endangerment claim. ..............17

        J.      Twitter's TOS bars Al-Ahmed's claims for breach of contract, negligent
                hiring, and breach of the implied covenant of good faith and fair dealing...........18

III.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE
        NORTHERN DISTRICT OF CALIFORNIA ..................................................19

IV.     CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdulaziz v. Twitter, Inc. et al.*,
   No. 19-CV-06694-LB, 2020 WL 6947929 (N.D. Cal. Aug. 12, 2020).............................7, 11

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013)...........................................................................................................20

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)...............................................................................................2

*Bochan v. La Fontaine*,
   68 F. Supp. 2d 692 (E.D. Va. 1999) ....................................................................................4

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017) .......................................................................................................5

*Brittain v. Twitter Inc.*,
   No. CV-18-01714-PHX-DGC, 2019 WL 110967 (D. Ariz. Jan. 4, 2019) ............................20

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015) ...............................................................................15

*Cantor Fitzgerald, L.P., v. Peaslee*,
   88 F.3d 152 (2d Cir. 1996).................................................................................................3

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991)..........................................................................................................20

*Chem. Bank v. World Hockey Ass'n*,
   403 F. Supp. 1374 (S.D.N.Y. 1975).....................................................................................4

*Corley v. Vance*,
   365 F. Supp. 3d 407 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F.
   App'x 62 (2d Cir. 2020)......................................................................................................3

*Darnaa, LLC v. Google LLC*,
   756 F. App'x 674 (9th Cir. 2018) ......................................................................................19

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008)............................................................................................................6

*Doe v. Del. State Police*,
   939 F. Supp. 2d 313 (S.D.N.Y. 2013).................................................................................3, 4

ii

*Enigma Software Grp. USA v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016).....................................................................12

*Express Cos., Inc. v. Lifeguard Med. Sols., LLC*,
    No. 10CV178-WQH-WMC, 2010 WL 11508847 (S.D. Cal. Sept. 1, 2010) .........................14

*Fed. Trade Comm'n v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016).....................................................................11

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) ...........................12

*Johnson v. UBS AG*,
    791 F. App'x 240 (2d Cir. 2019) ..............................................................5

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ................................................................11

*Klayman v. Obama*,
    957 F. Supp. 2d 1 (D.D.C. 2013) ..............................................................15

*Levitt v. Yelp! Inc.*,
    No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765
    F.3d 1123 (9th Cir. 2014) ..................................................................12

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................16

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020)..........................................................5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................6, 7

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
    No. 19-1284, 2020 U.S. LEXIS 4834 (U.S. Oct. 13, 2020) ......................................11

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019).....................................................................13

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ..........................................................14

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................................15

*Nat'l Football League v. Miller*,
    No. 99 CIV. 11846 JSM, 2000 WL 335566 (S.D.N.Y. Mar. 30, 2000)..............................4

iii

*Nicosia v. Amazon.com, Inc.*,
  384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) .....................19

*Parker Madison Partners v. Airbnb, Inc.*,
  283 F. Supp. 3d 174 (S.D.N.Y. 2017)........................................................................................7

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997)....................................................................................................3

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010)........................................................................................................4

*Ross v. Port Chester Hous.*
  Auth., No. 17-CV-4770 (NSR), 2019 WL 4738941 (S.D.N.Y. Sept. 27, 2019) .............2, 6, 17

*Rubin v. City of New York, New York*,
  No. 06 CIV. 6524 HB, 2007 WL 950088 (S.D.N.Y. Mar. 29, 2007).......................................4

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..................................................................................17

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) ......................................................................................9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016), *as revised* (May 24, 2016)..........................................................5, 7, 8

*Wasson v. Sonoma Cty. Jr. Coll. Dist.*,
  4 F. Supp. 2d 893 (N.D. Cal. 1997) ........................................................................................16

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..................................................................................17

*Wilson v. Twitter*,
  No. 3:20-cv-00054, 2020 WL 3410349 (S.D. W. Va. May 1, 2020) ......................................13

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................................................15

**State Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ............................................................................................................9

*C.R. v. Tenet Healthcare Corp.*,
  169 Cal. App. 4th 1094 (2009) .................................................................................................9

*Delfino v. Agilent Techs., Inc.*,
  145 Cal. App. 4th 790 (2006) .................................................................................................10

iv

*Doe v. Capital Cities*,
   50 Cal. App. 4th 1038 (1996) ...................................................................................18

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ...................................................................................15, 16

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015) ...................................................................................19

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
   12 Cal. 4th 291 (1995) ...................................................................................10, 11

*Loder v. City of Glendale*,
   14 Cal. 4th 846 (1997) ...................................................................................15

## Federal Statutes

15 U.S.C. § 1125 ...................................................................................12

28 U.S.C. § 1404(a) ...................................................................................20

47 U.S.C. § 230(b)(1)-(2) ...................................................................................12

47 U.S.C. § 230(c)(1) ...................................................................................1, 11, 12, 13

47 U.S.C. § 230(e)(2) ...................................................................................12

## Rules

CPLR § 302(a)(1) ...................................................................................2, 3, 5

CPLR § 302(a)(3) ...................................................................................2, 3, 4, 5

Fed. R. Civ. P. 9(b) ...................................................................................14

Fed. R. Civ. P. 12(b)(2) ...................................................................................5

## Other Authorities

Jack M. Balkin, *Information Fiduciaries and the First Amendment*, 49 UC Davis
   Law Review 4, 1186 (2016)...................................................................................13

v

I.     **INTRODUCTION**[1]

Because Plaintiff Ali Al-Ahmed fails to articulate a viable basis for personal jurisdiction over Defendant Twitter, Inc. in New York, the entire First Amended Complaint ("FAC") should be dismissed without reaching the merits.

Should the Court choose to address the merits of Al-Ahmed's claims, the result would be the same.  Al-Ahmed's claims against Twitter are based on two alleged events:  (1) the 2014 and 2015 intrusion of Al-Ahmed's Twitter account by the Kingdom of Saudi Arabia ("KSA"); and (2) the 2018 suspension of Al-Ahmed's Arabic-language Twitter account (although his English-language Twitter account remains active).  The FAC is animated by the fantastic theory that Twitter—a publicly traded company founded and based in the United States—is liable for these wrongs because it operates under the control of the KSA.  This rank and implausible speculation is contradicted by the facts alleged in the FAC itself.

As pled in the FAC, Twitter did not spy on Al-Ahmed's account or persecute him and his associates; these actions were undertaken by the KSA.  Thus, as set forth in Twitter's opening brief, Al-Ahmed has sued the wrong party.  But Al-Ahmed's Opposition does not meaningfully address this problem.  Rather, much of his Opposition is spent reiterating his FAC's conclusory allegations and imaginatively theorizing about the KSA's purported control over Twitter, none of which is supported by well-pleaded facts or reality.  And throughout his opposition, Al-Ahmed fails to address the applicable law, choosing instead to focus on his view of what the law *should* be.  For example, Al-Ahmed seeks to overcome the immunity granted to Twitter under Section 230 of the Communications Decency Act ("CDA") by citing to a concurrence by Justice Clarence Thomas in which he suggests that the Supreme Court should revisit the scope of Section 230.  Similarly, Al-Ahmed argues that he has viable free speech, invasion of privacy, and negligent hiring and supervision claims based on the novel theory that Twitter is an

---

[1] Throughout this brief, all emphases within quotations are added and all internal citations are omitted unless otherwise noted.

"information fiduciary"—a concept that only exists in the pages of a law review article.  His novel theory is entirely unsupported by, if not contrary to, all controlling authority.

Simply put, Al-Ahmed's Opposition only confirms that the FAC should be dismissed. Alternatively, if the Court does not dismiss the FAC, this action should be transferred to the Northern District of California pursuant to the valid and enforceable forum-selection clause in Twitter's Terms of Service ("TOS").

## II.   ARGUMENT

### A.   Al-Ahmed fails to establish personal jurisdiction over Twitter.

As explained in Twitter's opening brief, there are two possible theories of personal jurisdiction:  general jurisdiction and specific jurisdiction.  Mot. at 6-8.  In his Opposition, Al-Ahmed does not address general jurisdiction, thereby conceding that the Court lacks it.  *See Ross v. Port Chester Hous.* Auth., No. 17-CV-4770 (NSR), 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.").  Al-Ahmed's arguments instead center on two provisions of New York's long-arm statute, CPLR § 302(a)(1) and (a)(3).  Opp. at 3.  These subsections confer specific jurisdiction where plaintiff's causes of action either ***arise from*** defendant's business transacted within the state (subsection (a)(1)), or ***arise from*** defendant's tortious acts committed outside of the state that result in injury within the state (subsection (a)(3)).  CPLR § 302(a)(1), (a)(3).  Al-Ahmed, however, fails to establish that either subsection applies here, nor can he meet the requirements of due process because his claims do not ***arise from***, much less relate to, any alleged business contacts by Twitter within New York or any alleged injury caused by Twitter in New York.

### 1.   The Court lacks specific jurisdiction under CLPR § 302(a)(1).

Turning first to CPLR § 302(a)(1), the court may only exercise specific personal jurisdiction:  (1) over a defendant who transacts business in New York; and (2) when plaintiff's claims ***arise from*** that business.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.

2007).  In his Opposition, Al-Ahmed discusses how Twitter's "website" is available in New York and how it allegedly earns advertising revenue from New York businesses.  Opp. at 1-3.  But even if that were sufficient to meet the first prong—*i.e.*, that Twitter "transacts business in New York"—Al-Ahmed does not (and cannot) establish that any of his claims ***arise from*** that business.  None of Al-Ahmed's alleged wrongs—the intrusion of his Twitter account and the suspension of his Arabic-language account—relate to Twitter's claimed availability or advertising in New York.  In *Corley v. Vance*, 365 F. Supp. 3d 407, 434–35 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020), for example, the plaintiff's claims arose out of alleged wrongful disclosure of his personal information by the defendant, Facebook.  There, the court held that New York lacked specific jurisdiction over Facebook under subsection (a)(1) because plaintiff's claims "ar[o]se out of [defendant's] activity in California, where its records custodians are located." *Corley*, 365 F. Supp. 3d at 435.  So too here, where Al-Ahmed alleges that the disclosure of his information occurred in California, *see, e.g.*, FAC ¶ 15 n.3 ("After Alzabarah returned to San Francisco . . . he accessed . . . account information of dozens of Twitter users"), and more generally that the "acts and omission giving rise to [his] claims . . . occurred in California," FAC ¶ 4.[2]  Accordingly, as in *Corley*, the Court lacks personal jurisdiction under subsection (a)(1).  *See Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 156 (2d Cir. 1996) (holding that the court lacked specific jurisdiction under subsection (a)(1) where "no activity related to the conduct complained of occurred in New York").

## 2.    The Court lacks specific jurisdiction under CLPR § 302(a)(3).

For specific jurisdiction under subsection CPLR § 302(a)(3) to apply, "(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York." *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 325–26 (S.D.N.Y. 2013).  But, Al-Ahmed

---

[2] Al-Ahmed's reliance on *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) is misplaced.  There, the defendant repeatedly communicated with plaintiff via phone calls and letters from New York and those communications formed the basis of the complaint.  Whereas here, none of Twitter's alleged torts related to any of its purported New York "business."

1538383

has not alleged acts satisfying the third prong—an injury to a person or property within New York. "The Second Circuit has interpreted the injury requirement in § 302(a)(3) to mean that the original event which caused the injury must have taken place in New York." *Id.* at 327. Further, "[i]t is settled New York law that the suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for [] § 302(a)(3) purposes." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38 (2d Cir. 2010). Moreover, where non-physical injuries are alleged, the fact that the plaintiff resides in or has a business in New York is not enough to confer jurisdiction, and "in a commercial tort situation the place of the injury will usually be deemed to be the place where the critical events associated with the dispute took place." *Chem. Bank v. World Hockey Ass'n*, 403 F. Supp. 1374, 1380 (S.D.N.Y. 1975); *see also Penguin Grp. (USA) Inc.*, 609 F.3d at 36–37.

Applying these authorities, there is no basis for subsection (a)(3) jurisdiction here. Al-Ahmed has not established that he suffered any injury in New York as a result of Twitter's alleged torts. While he argues in his Opposition that "the Court must accept as true [his] allegations that . . . Defendant caused damage to Plaintiff in New York," Opp. at 3, he in fact makes no such allegation. It does not appear in the FAC, and his declaration submitted with his Opposition merely states that "a majority of [his] . . . business prospects and livelihood are derived from New York-based businesses," which does not establish that he suffered any injury *in* New York. Al-Ahmed Decl. ¶ 3. Even if his residence were somehow relevant, Al-Ahmed does not reside in New York. *See id*. Crucially, by Al-Ahmed's own account, the critical events underlying his claims occurred in California, not New York. *See* FAC ¶ 4.[3]  Accordingly,

---

[3] Al-Ahmed cites *Bochan v. La Fontaine*, 68 F. Supp. 2d 692, 701 (E.D. Va. 1999). But that case discussed the reach of Virginia's long-arm statute, not New York's. Al-Ahmed's other cited cases are equally inapposite. *Nat'l Football League v. Miller*, No. 99 CIV. 11846 JSM, 2000 WL 335566, at *2 (S.D.N.Y. Mar. 30, 2000), involved claims of infringement of "New York Giants" and "New York Jets" copyrights, which, on its face, intended to and allegedly did cause injuries to plaintiff's business in New York. Likewise, in *Rubin v. City of New York, New York*, No. 06 CIV. 6524 HB, 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007), Rubin sold potentially-trademark-infringing merchandise bearing the words "NYPD" to New York customers over the internet. In this case, no copyright or trademark infringement has been alleged that would impact New York businesses, and more generally, any alleged New York

Al-Ahmed has not established personal jurisdiction under CPLR § 302(a)(3).

### 3.   Personal jurisdiction would not comport with Due Process.

Not only has Al-Ahmed failed to satisfy the provisions of the New York long-arm statute he

relies on, but his claims also do not permit the Court to exercise personal jurisdiction in

accordance with Due Process.  "Due process dictates that a court may only exercise specific

jurisdiction if the claims *arise out of or relate* to the defendant's contacts with the forum [state]."

*Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017).  For the reasons already

discussed above regarding CPLR § 302(a)(1), Al-Ahmed's claims do not arise out of any of

Twitter's alleged New York contacts.  Accordingly, the Court lacks personal jurisdiction over

Twitter.  *See Johnson v. UBS AG,* 791 F. App'x 240, 243 (2d Cir. 2019) (upholding dismissal for

lack of personal jurisdiction where plaintiffs failed to allege an "adequate link between the

[forum] State and the [their] claims"); *see also Lugones v. Pete & Gerry's Organic, LLC*, 440 F.

Supp. 3d 226, 235 (S.D.N.Y. 2020) (holding court lacked personal jurisdiction where plaintiff

established that defendant had a connection to New York but "not that . . . [p]laintiffs' claims

arise out of or relate to that connection").  Because Al-Ahmed has failed to establish personal

jurisdiction, the Court should dismiss the FAC in its entirety.  *See* Fed. R. Civ. P. 12(b)(2).

### B.   Al-Ahmed fails to establish Article III standing to pursue claims against Twitter related to the alleged 2014-2015 KSA espionage.

Al-Ahmed asserts eight causes of action[4] based at least in part on the KSA's alleged 2014

and 2015 intrusion of his Twitter account information.  For the reasons set forth in Twitter's

opening brief (Mot. at 8-10), Al-Ahmed lacks Article III standing to pursue these claims because

he has not pleaded an "injury in fact" that is "fairly traceable" to Twitter's alleged conduct.  *See*

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  The

---

contacts by Twitter have no bearing on Al-Ahmed's claims.

[4] These causes of action are for violation of the Stored Communications Act ("SCA") (FAC
¶ 29); breach of contract (*id.* ¶ 40a-c); tortious invasion of privacy (*id.* ¶ 51); negligent hiring,
training, and supervision ("negligent hiring") (*id.* ¶ 64); breach of the implied covenant of good
faith and fair dealing (*id.* ¶ 72); reckless endangerment (*id.* ¶ 75); fraudulent inducement (*id.*
¶ 83); and free speech (*id.* ¶ 95).

Opposition does not even attempt to establish standing for most of these causes of actions. Rather, Al-Ahmed's entire standing theory hinges on his invasion of privacy claim, which he suggests is sufficient to establish standing to assert *all* of his causes of action.  Opp. at 4-5.  But that is not how standing works; it is "not dispensed in gross."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).  "Rather, a plaintiff must demonstrate standing for *each claim* he seeks to press and for *each form of relief* that is sought."  *Id*.  Because Al-Ahmed does not even attempt to meet his burden of establishing Article III standing as to the other seven claims based on the intrusion of his Twitter account, those claims should be summarily dismissed.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing" standing); *see also Ross v. Port Chester Hous. Auth.*, 2019 WL 4738941, at *7 ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.").

Al-Ahmed also fails to establish standing with respect to his invasion of privacy claim. *First*, Al-Ahmed fails to establish that his alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560-61.  As alleged in the FAC, the intrusion into Al-Ahmed's Twitter account was conducted by the KSA and in violation of Twitter's internal policies.  FAC ¶¶ 15-18.  Attempting to blame Twitter for the "independent action" of a third-party, Al-Ahmed argues that Twitter was "complicit or otherwise reckless" in the KSA's espionage activities.  Opp. at 4.  But the facts alleged in the FAC do not support such an inference.

Moreover, that argument misses the point.  While Al-Ahmed alleges that two rogue Twitter employees accessed his Twitter account information in 2014 and 2015 while serving as KSA operatives, he alleges no facts establishing that any of the harms the KSA later perpetrated **resulted from** that intrusion of his account.  In fact, he fails to identify any actual Twitter account information that was accessed or used by the KSA to inflict any of the alleged harm.  Rather, Al-Ahmed describes himself as an "active and courageous journalist" who has "made it his life's

6

work to … expose systemic corruption, violence, and police state tactics within the KSA .…"
FAC ¶¶ 10-11.  As a result, the "KSA has consistently attempted to—quite literally—silence
[Al-Ahmed's] voice, even going so far as to attempt to kidnap and kill him on multiple
occasions."  *Id.*  Simply put, per the FAC, Al-Ahmed's dissident activity—not Twitter—is the
cause of any alleged persecution by the KSA, and Al-Ahmed thus lacks Article III standing to
assert claims against Twitter.  *See Abdulaziz v. Twitter, Inc. et al.*, No. 19-CV-06694-LB, 2020
WL 6947929, at *6 (N.D. Cal. Aug. 12, 2020) ("[P]laintiff does not explain how the compromise
of the Twitter data caused the harm. … Indeed, he is a political dissident with an active social-
media presence who suffered persecution before . . .").

Second, the FAC fails to establish a "particularized" injury arising out of the alleged
invasion of his privacy; that is, an injury that "affect[s] the plaintiff in a personal and individual
way."  *Spokeo*, 136 S. Ct. at 1548.  Rather, Al-Ahmed asserts harm to third parties (FAC ¶ 20)
and generic allegations of personal harm (*id.* ¶ 32-33)—neither of which is sufficient to satisfy
Article III's injury in fact requirement.  *Lujan*, 504 U.S. at 563.  ("[T]he 'injury in fact' test
requires . . . that the party seeking review be himself among the injured."); *see also Parker
Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 181 (S.D.N.Y. 2017) (dismissing
complaint for lack of Article III standing where plaintiff pleaded generalized damages but did
not "include a single example or give any details whatsoever as to any actual injury to
[p]laintiff").  Al-Ahmed attempts to bolster these allegations with a declaration claiming that he
suffered "hundreds of thousands of dollars in lost revenue from writing articles and books and
through podcasts."  Al-Ahmed Decl. ¶ 16.  But this allegation fails because it lacks any causal
connection to the alleged KSA-sponsored espionage underpinning his invasion of privacy claim.
That is, even if generic claims of lost business opportunities were sufficient to satisfy Article III,
these claimed injuries were allegedly the result of Al-Ahmed's Arabic-language Twitter account
being suspended, not the KSA's intrusion into Al-Ahmed's Twitter account.

Finally, relying on *Spokeo,* Al-Ahmed argues that he does not have to prove a
"particularized" injury at all, but rather that the mere violation of his privacy rights is sufficient

1538383

for Article III.  This is a misreading of Supreme Court precedent.  While *Spokeo* states that a violation of an individual's statutory rights may be a basis for standing, it also reiterates the long-standing principle that "an injury in fact must be both concrete and particularized."  *Spokeo*, 136 S. Ct. at 1548.  But, as discussed above, the FAC fails to meet this standard.

Because he has failed to establish an "injury in fact" or any "causal nexus" between any such injury and Twitter's actions, Al-Ahmed's claims based on the 2014 and 2015 KSA espionage should be dismissed.

### C.     Most of the FAC's causes of action should be dismissed as time-barred.

Al-Ahmed's FAC alleges two distinct wrongs by Twitter: (1) the 2014-2015 unauthorized intrusion of his Twitter account by two KSA operatives; and (2) the 2018 suspension of his Arabic-language Twitter account.  With respect to Al-Ahmed's claims premised on the first event—the alleged intrusion of his account—Twitter's opening brief explains that because Al-Ahmed waited more than four-and-a-half years after he learned of the intrusion to bring his claims, his SCA, invasion of privacy, negligent hiring, reckless endangerment, fraudulent inducement, breach of contract and breach of implied covenant of good faith and fair dealing claims—to the extent premised on that intrusion—are time-barred.  Mot. at 10-12.  With respect to the FAC's claims premised on the second event—Twitter's suspension of Al-Ahmed's Arabic-language account—Twitter's motion explains that by waiting more than two years after the account suspension, Al-Ahmed's intentional interference with prospective economic advantage claim is time-barred.  Mot. at 12.

In his Opposition, notwithstanding the applicable statutes of limitations, Al-Ahmed argues that all of his claims are timely due to the "continuous accrual doctrine," which he argues applies where "a series of wrongs or injuries may be viewed as each triggering its own limitations period."  Opp. at 8.  But the continuous accrual doctrine cannot save Al-Ahmed's claims here because Al-Ahmed has failed to allege any ongoing or potentially "continuously accruing" wrong.  "Generally speaking, continuous accrual applies whenever there is a

continuing or recurring obligation: When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013).  But Al-Ahmed does not allege any continuing obligation breached by Twitter—either with respect to the account intrusion or the account suspension.  *See, e.g.* FAC ¶ 15 (alleging that Alzabarah and Abouammo improperly accessed his and other Twitter accountholders' information "[i]n or around August 2013, until in or around December 2015"); FAC ¶ 21 ("on or about May 2018, . . . Twitter suspend[ed] Al-Ahmed's Arabic Twitter account").  And "[w]ithout separate wrongful acts to trigger the statute of limitations, continuous accrual does not apply."  *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 896 (N.D. Cal. 2015) (declining to apply rule where "alleged recurring injuries during the limitations period arose out of a single transaction that occurred before the limitations period").[5] Accordingly, there is no basis for the continuous accrual doctrine to apply here and Al-Ahmed's claims should be dismissed as time-barred for the reasons set forth in Twitter's motion.

### D.    Twitter is not vicariously liable for its rogue employees' misconduct.

Al-Ahmed's Opposition does not dispute Twitter's cited authority or otherwise meaningfully respond to Twitter's argument that it is not vicariously liable for the acts of its rogue employees, Ali Alzabarah and Ahmad Abouammo.

Regarding ratification, Al-Ahmed superficially claims that the FAC is "replete with allegations" that Twitter ratified the conduct of its employees, Opp. at 29, but the portions of the FAC he cites merely allege facts regarding the employees' intrusion of his account and the alleged harm that he claims resulted.  These allegations do not support a ratification theory, which requires facts demonstrating Twitter's approval or adoption of the employees' conduct as its own.  *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1110-11 (2009).

---

[5] In his Opposition, Al-Ahmed obliquely references "each of Twitter's bad acts from December 2015 to the present date," *see* Opp. at 9, but nowhere in his FAC, or elsewhere, does he identify any such bad acts.  Similarly, his Opposition's reference to Twitter having "continu[ed] to keep [his] . . . account termination/suspended" or generically "committing fraudulent acts against [him]" fail to substitute for any well-pleaded facts of serial or continued wrongs.  Opp. at 8.

Al-Ahmed otherwise doubles down on his argument that the suspension of his Arabic-language Twitter account in 2018 demonstrates that Twitter ratified its rogue employees' intrusion of his account on behalf of the KSA in 2014 and 2015. But as explained in Twitter's opening brief, the 2018 suspension of Al-Ahmed's Arabic-language Twitter account is unrelated to the KSA's alleged access of his account information more than three years earlier. Mot. at 12-14. Al-Ahmed's account was suspended after he repeatedly directed abusive and "repugnant" language at other Twitter users. *See* Mot at 6; RJN, Ex. 5; *see also* Twitter Employee Decl. ¶ 7; Supp. Twitter Employee Decl. ¶ 4; ECF No. 49 at 2.[6] And, in any event, the suspension does not support a claim that Twitter ratified the intrusion of his account since by the time of the suspension, Twitter already had removed Alzabarah from his position; Abouammo had left the company; and Twitter was cooperating with an investigation into both of them. *See* Mot at 13. The relevant authorities do not support ratification given such facts. *See, e.g., Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 810-11 (2006) (holding no ratification exists where the employer had terminated the wrongdoer-employee after discovering his torts, and thus had not approved the torts); *see also* Mot. at 12-14 (citing additional cases). Al-Ahmed says nothing of these facts and fails to address this case law in his Opposition.[7]

With respect to vicarious liability under a *respondeat superior* theory, Al-Ahmed's Opposition repeats the bald assertion that Twitter "ratified its employees conduct." But ratification is a separate theory of vicarious liability—one not applicable here—and it does not support a finding of *respondeat superior* liability. *Respondeat superior* liability requires that the employees' torts be inherent, typical, or expected by the employer in the course of the employee's duties. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995).

---

[6] Exhibits 1-6N are exhibits to Declaration of Twitter Employee filed concurrently with Twitter's motion. In light of the Court's order granting Twitter's sealing request, *see* ECF No. 49, Twitter refers to the declarant solely as "Twitter Employee," including with respect to the Supplemental Twitter Employee Declaration filed concurrently with this brief.

[7] Al-Ahmed otherwise suggests that Twitter's status as a so-called "information fiduciary" and its "special power over its users" creates "special duties." *See* Opp. at 29. However, his assertions are unrelated to the law of vicarious liability and find no basis in statute or precedent.

1538383

Al-Ahmed seems to concede that "spying on behalf of the KSA was not part of [Alzabarah and Abouammo's] job duties" but then argues that this somehow "misses the point." Opp. at 30. Yet, that is precisely the point—the tort itself must be inherent, typical, or expected in the course of the employees' duties. *See Lisa M.*, 12 Cal. 4th at 298. Al-Ahmed otherwise argues that Alzabarah and Abouammo had "access to Twitter's infrastructure, data, and information systems," Opp. at 30, but again, that does not make Twitter liable for their actions under a *respondeat superior* theory. *See Abdulaziz*, 2020 WL 6947929, at *7 ("[P]roviding a job and access to its platform and user information does not establish Twitter's *respondeat superior* liability for its rogue employees' unauthorized spying for Saudi operatives."); Mot. at 14 n.12. Because Al-Ahmed fails to support his assertions of vicarious liability with well-pleaded facts, all of his claims premised on a vicarious liability theory[8] should be dismissed.

### E.     CDA Section 230(c)(1) bars Al-Ahmed's account suspension-related claims.

Section 230(c)(1) law is clear: immunity applies where "(1) [the defendant] is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider, and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). For the reasons set forth in Twitter's Motion, each of these elements is satisfied here. Mot. at 15-17. Indeed, Al-Ahmed's Opposition does not (and cannot) dispute this. Rather, Al-Ahmed puts forth a series of arguments essentially asking this Court to ignore binding precedent in favor of Al-Ahmed's view of what the law *should be*. These arguments are without merit.

*First*, Al-Ahmed cites Justice Thomas's concurrence in *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC,* No. 19-1284, 2020 U.S. LEXIS 4834 (U.S. Oct. 13, 2020)—a decision *denying certiorari* in which Justice Thomas suggests that the Supreme Court should revisit the

---

[8] Al-Ahmed's SCA (FAC ¶ 29), invasion of privacy (*id.* ¶ 51), breach of contract (*id.* ¶ 40a-c), breach of the implied covenant of good faith and fair dealing (*id.* ¶ 72), fraudulent inducement (*id.* ¶ 83), and free speech (*id.* ¶ 95) claims are all premised on vicarious liability.

scope of Section 230 immunity "in an appropriate case."  But the comments by a single Supreme Court Justice have no precedential value and, therefore, no bearing on the task before this Court.

*Second*, Al-Ahmed argues that Twitter's conduct in suspending his account runs contrary to the policies underlying Section 230.  This argument is both wrong and also irrelevant to the resolution of Twitter's Motion.  Congress enacted Section 230 to, among other things, "promote the continued development of the Internet" and "preserve the vibrant and competitive free market that presently exists for the Internet …"  47 U.S.C. § 230(b)(1)-(2).  Thus, like most circuits, the Second Circuit has held that "the text of Section 230(c)(1) should be construed broadly in favor of immunity."  *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020).  That is the standard this Court must apply.

*Third*, Al-Ahmed argues that Twitter cannot claim immunity under Section 230(c)(1) because it was not acting in "good faith" when it suspended his Arabic-language Twitter account.  Opp. at 15-16.  Although Twitter disputes this allegation, it is irrelevant to the Court's analysis, as good faith is not a requirement for application of Section 230(c)(1) immunity—under which Twitter is proceeding.  *See Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765 F.3d 1123 (9th Cir. 2014) (recognizing that while Section 230(c)(2) has a good-faith requirement, (c)(1) has no such requirement).

*Fourth,* Al-Ahmed tries to circumvent Section 230(c)(1) immunity by framing this action as an intellectual property dispute expressly excluded from the CDA.  *See* Opp. at 18 (citing 47 U.S.C. § 230(e)(2)) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.")[9]  To that end, Al-Ahmed points to his claim for interference with prospective economic advantage, *see* Opp. at 18, but that claim is not rooted in intellectual property law, but rather it hinges on Al-Ahmed's alleged use of his Twitter account "as a means

[9] Al-Ahmed also contends that his FAC asserts facts sufficient to state a claim for false or misleading advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.  Although some courts have found that certain Section 43(a) claims fall within the scope of the CDA's intellectual property exclusion, *see, e.g., Enigma Software Grp. USA v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 273-74 (S.D.N.Y. 2016), because Al-Ahmed has not even pleaded a Lanham Act violation, his argument is simply a non-sequitur.

1538383

to network, and secure other employment and career opportunities." FAC ¶ 46.

Because the requirements for Section 230(c)(1) immunity have been satisfied, Al-Ahmed's account-suspension-related claims—interference with prospective economic advantage, in full, and breach of contract, breach of the implied covenant of good faith and fair dealing, and free speech, to the extent premised on account-suspension—should be dismissed.

### F.     Al-Ahmed cannot state a Free Speech claim against Twitter.

The Free Speech Clause of the First Amendment "prohibits only *governmental* abridgment of speech" and "does not prohibit *private* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Further, "merely hosting speech by others . . . does not alone transform private entities into state actors subject to First Amendment constraints." *Id.* at 1930; *see also Wilson v. Twitter*, No. 3:20-cv-00054, 2020 WL 3410349, at *5 (S.D. W. Va. May 1, 2020) ("Twitter is a private entity and is not subject to the state-action doctrine."). The Court's analysis should end here.

Nonetheless, citing a recent law review article, Al-Ahmed attempts to breathe life into his Free Speech claim by asserting the novel theory that Twitter is an "information fiduciary," thereby making it a "*de facto* public utility … bound by the First Amendment's proscriptions against governmental abridgment of speech." Opp. at 19 (citing Jack M. Balkin*, Information Fiduciaries and the First Amendment*, 49 UC Davis Law Review 4, 1186 (2016)). This argument is wrong for several reasons. *First*, a law review article offering a vision of what the law *should be* in the future cannot overcome Supreme Court precedent stating what the law *is* today. Indeed, Al-Ahmed does not cite a single judicial decision adopting the concept of an "information fiduciary" to expand the scope of the First Amendment. *Second*, the law review article Al-Ahmed relies on does not even stand for the proposition that the First Amendment should be expanded to apply to so-called "information fiduciaries." Rather, it merely posits that the "First Amendment permits somewhat greater regulation of information fiduciaries than it does for other people and entities." *Id.* at 1186. In other words, the author asserts that the

13

government should be able to regulate certain types of speech in particular contexts without running afoul of the First Amendment. *Id.* at 1213. The article does not advocate creating a tort cause of action under the First Amendment to be wielded against private parties.

> ### G.    Al-Ahmed's fraudulent inducement claim fails to satisfy Rule 9(b)'s heightened pleading requirement.

As set out in Twitter's Motion, Al-Ahmed fails to plead with particularity three of the five elements of his fraudulent inducement claim: (1) misrepresentation; (2) scienter; and (3) intent to induce reliance. In his Opposition, Al-Ahmed does not even address, much less rebut, Twitter's arguments regarding scienter and intent to induce reliance. With respect to his failure to plead misrepresentation, Al-Ahmed still does not explain "what is false or misleading about a statement, and why it is false"—a necessary requirement highlighted by Twitter in its Motion. *See* Mot. at 18 (citing *Express Cos., Inc. v. Lifeguard Med. Sols., LLC*, No. 10CV178-WQH-WMC, 2010 WL 11508847, *3 (S.D. Cal. Sept. 1, 2010)). In his Opposition, Al-Ahmed merely repeats the conclusory allegation from his FAC that Twitter misrepresented to him that it "would maintain a safe and secure platform," Opp. at 24 (citing FAC ¶¶ 80-82), but he still does not identify any actual representation by Twitter to that effect. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 821 (N.D. Cal. 2014) (dismissing plaintiff's fraud claim where she had not pled with particularity any specific statement by defendant Apple that its Maps function would "always work flawlessly and without error"). Moreover, contrary to any such representation, and as described in detail in Twitter's opening brief, Twitter's TOS has consistently told users that Twitter does ***not*** guarantee the security of its services. *See* Mot. at 19; *see also* RJN, Ex. 6N at 8; *see also* Exs. 6A-M. Because Al-Ahmed fails to plead three separate elements of his fraudulent inducement claim, his claims should be dismissed.[10]

---

[10] Al-Ahmed remarks that because Twitter is "an information fiduciary" it is "liable for violating its privacy policies." Opp. at 24. Once again, he fails to cite any authority for this argument or explain why it absolves him from satisfying Rule 9(b)'s pleading requirements.

### H.     Al-Ahmed fails to state a claim that Twitter violated his privacy.

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).  To state a claim for invasion of privacy under the California Constitution, Al-Ahmed must demonstrate (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) a serious invasion of privacy constituting "an ***egregious*** breach of . . . social norms."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994).  These "threshold elements" permit courts to "weed out" at the pleading stage claims that do not rise to the level of a significant intrusion upon "a constitutionally protected privacy interest."  *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997).  As set forth in Twitter's opening brief, Al-Ahmed's FAC fails to establish the first and third of these "threshold elements."  Mot. at 20-22.

As to the first element, Al-Ahmed fails to adequately plead a "legally protected privacy interest" because the FAC lacks specificity as to the private matters that were intruded upon and how they were in fact private.  Al-Ahmed merely alleges in conclusory fashion that his "personal and highly sensitive information" was disclosed (FAC ¶ 8), and that information was disclosed concerning his "private life, career, and reputation" (*Id.* ¶ 54).  But such generic allegations are insufficient under California law, as a plaintiff must provide "robust allegations" about the ***specific information*** allegedly invaded.  *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1040-42 (holding that there is "no legally protected privacy interest and reasonable expectation of privacy in emails as a general matter" and that plaintiff must "plead specific email content in specific emails"). [11]

Al-Ahmed attempts to justify the lack of specificity by noting that the primary argument in favor of creating California's right to privacy was that it "prevents government and business

---

[11] The cases cited in Al-Ahmed's Opposition do not rebut this authority.  For example, in *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012), the Court held that plaintiff had a "legally protected [privacy] interest" because he specifically identified that the terms of his employment and financial compensation were at issue.  *Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013), is a D.C. District Court opinion vacated and remanded by the D.C. Circuit that does not involve California's right to privacy.

1538383

interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us." Opp. at 25 (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 27 (1994)). But the same California Supreme Court case Al-Ahmed relies on to make this point also holds that "[t]he first essential element of a state constitutional cause of action for invasion of privacy is the identification of a ***specific,*** legally protected privacy interest." *Hill*, 7 Cal. 4th 1 at 35. Accordingly, Al-Ahmed's generic allegations are not sufficient even under his cited case.

To the extent Al-Ahmed's Opposition attempts to specifically identify any information, it is information that is not legally protected. For example, Al-Ahmed points to his email addresses and phone number, but those have been on the internet since as early as January 2014, meaning he cannot assert a privacy claim as to them. *See, e.g.*, RJN, Exs. C and D; *see Wasson v. Sonoma Cty. Jr. Coll. Dist.*, 4 F. Supp. 2d 893, 908 (N.D. Cal. 1997). Al-Ahmed argues that these disclosures notwithstanding, he never made his "personal" phone number and email address publicly available. Opp. at 26. But whether or not he identifies this information as "personal" or "business" is irrelevant because the phone number and email address associated with Al-Ahmed's Twitter accounts—and the only such information in Twitter's possession—are the same as those Al-Ahmed publicly disclosed. *See* Supp. Decl. of Twitter Employee ¶ 3; *see also* RJN, Exs. C and D. Further, he claims that he only shared his phone number via a private message, but Exhibit C is a public Tweet by Al-Ahmed listing his phone number. *See* RJN, Ex. C; Srinivasan Decl. ¶ 4. The other purportedly "private" information he identifies, his list of Twitter followers or "contacts" was always publicly available on Al-Ahmed's Twitter account as a result of Twitter's standard user interface.

As to the third element, courts regularly dismiss invasion-of-privacy claims under California law at the pleading stage for not establishing that the alleged conduct amounted to an "'egregious breach of the social norms' [necessary] to establish an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (collecting cases for the proposition that "[t]he California Constitution and the common law set a high bar for . . .

invasion of privacy claim[s].").  Al-Ahmed does not cite any case law for the proposition that being a victim of theft (as Twitter was) constitutes an "egregious breach of social norms." Rather, he cites a single case for the unremarkable proposition that "whether dissemination of private information is egregious or merely routine behavior" may, in certain cases, be a question of fact.  *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1055 (N.D. Cal. 2018).  But in *Williams* the plaintiffs alleged that Facebook was ***intentionally*** collecting its phone app users' call and text data without consent.  The Court found that whether Facebook's data scraping policy was "egregious or merely routine behavior remain[ed] a question of fact given plaintiffs averred ***lack of any advance notice or opportunity to consent*** to the data scraping."  *Id*. at 1055.

In this case, Twitter did not perpetrate the alleged egregious conduct; rather, it was a victim as well.  While Abouammo, Alzabarah, and the KSA may have engaged in egregious and criminal misconduct, Al-Ahmed cannot claim that Twitter's alleged failure to prevent those actions was itself an "egregious breach of social norms."  *See Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (holding that theft of a retail store's laptop containing personal information, including the social security numbers of job applicants, did not constitute an egregious breach of privacy by the retail store, which itself was an unwitting victim of the theft). Thus, Al-Ahmed also fails to satisfy the third element of an invasion of privacy claim.

I.     **Al-Ahmed fails to plead facts necessary to support his negligent hiring, supervision, and retention claim and his reckless endangerment claim.**

In the first instance, Al-Ahmed's Opposition does not respond to Twitter's argument that there is no cause of action under California law for reckless endangerment.  He thereby concedes that the claim should be dismissed.  *See Ross v. Port Chester Hous.* Auth., 2019 WL 4738941, at *7 ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.").

With respect to Al-Ahmed's negligent hiring, supervision and retention claim, his Opposition does not address the fundamental problem: the law requires that he plead facts establishing that it was foreseeable to Twitter (*i.e.* that there were "red flags") that Alzabarah and

Abouammo would become KSA operatives and spy on Twitter accounts, but Al-Ahmed does not plead any such facts. *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996) (the plaintiff must establish that the employer "knew or should have known that hiring the employee created a *particular risk or hazard* and *that particular harm* materialize[d]"); *see* Mot. at 22-23. Al-Ahmed completely ignores the relevant legal authority and what it requires him to plead. Instead, he blithely argues that because he alleges that Twitter gave its employees "access" to its information systems, and then failed to provide "adequate supervision," or "internal control[s]," he has pled his claim. Opp. at 31. But that is not enough to plead a negligent hiring, supervision, and retention claim and he offers no authority to support such a view. Under the applicable authority cited by Twitter in its opening brief, Al-Ahmed's negligent hiring, supervision and retention claim should be dismissed.

> ### J.     Twitter's TOS bars Al-Ahmed's claims for breach of contract, negligent hiring, and breach of the implied covenant of good faith and fair dealing.

For the reasons set forth in Twitter's opening brief, Al-Ahmed's claims for breach of contract, negligent hiring, and breach of the implied covenant of good faith and fair dealing are all barred by Twitter's TOS. Mot. at 23-24. By signing up for Twitter, Al-Ahmed agreed that the TOS "govern[ed his] access to and use of [Twitter's] services." *See* RJN, Ex. 6N at 1, Exs. 6A-6M; *see also* FAC ¶ 37 (acknowledging Al-Ahmed's assent to the TOS). Twitter's TOS includes a Limitation of Liability clause that bars Al-Ahmed from asserting liability against Twitter for an "inability to access or use the [Twitter] services" as well as for "unauthorized access, use or alteration of [his] transmissions or content" on any theory of liability, including contract or "tort (including negligence)." RJN, Ex. 6N at 8-9. The TOS also gave Twitter the right to "suspend or terminate [Al-Ahmed's] account or cease providing [Al-Ahmed] with all or part of the Services at any time for any or no reason." RJN, Ex. 6N at 16-17.

Al-Ahmed does not dispute that he assented to the TOS, nor does he dispute the case law supporting its enforceability. Rather, he argues that the "meaning and practical consequences [of Twitter's TOS] are not easy for the average user, such as Plaintiff, to understand" and therefore,

the TOS should not bar his claims.  Opp. at 21-22.  But the only support Al-Ahmed offers for such a view is a litany of law review articles and think pieces advocating various changes to the law, *see* Opp. at 21-22, n. 8-9, not any statute or case law.[12]  Per controlling authority, Terms of Service including limitation of liability clauses like Twitter's are regularly upheld by courts in this district and around the country to bar claims like his.  *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 124-125 (2015) (dismissing plaintiff's breach of contract claim based on limitation of liability clause); *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018) (same); *cf. Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 277 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) (dismissing claims based on arbitration provision in TOS).  Accordingly, Twitter's TOS is enforceable, and its limitation of liability clause requires dismissal of Al-Ahmed's claims for breach of contract, negligent hiring, and breach of the implied covenant of good faith and fair dealing.

## III.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

Alternatively, the Court should transfer this action to the United States District Court for the Northern District of California, for the reasons discussed in Twitter's opening brief.  Mot. at 24-25.  Since September 2009, every version of Twitter's TOS has included a forum-selection clause requiring that all claims, legal proceedings, or litigation arising in connection with Twitter's services be brought in San Francisco County, California, United States.  *See* RJN, Ex. 6A at 8, *see also* Exs. 6B-6M.  Twitter's TOS further requires that each user consent to personal jurisdiction and venue in those courts, and waive "objection as to inconvenient forum." RJN, Ex. 6N at 9, *see also* Exs. 6K-6M.

Al-Ahmed argues that Twitter's forum-selection clause is invalid because "the details of Twitter's forum-selection clause are buried in the fin[e] print of its TOS, are not easy for average users like Plaintiff to understand, and are otherwise vague and ambiguous."  Opp. at 32.  But

---

[12] Al-Ahmed also again relies on the novel concept of an "information fiduciary."  But as with his other arguments, he fails to cite any cases applying that concept, much less any case relying on the concept to bar enforcement of a limitation of liability clause in a TOS.

Al-Ahmed's argument is baseless.  The United States Supreme Court has held that forum-selection clauses, like the one in Twitter's TOS, are presumptively valid and enforceable as a matter of law.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88, 593-95 (1991) (upholding a forum-selection clause requiring "all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida"); *see also Brittain v. Twitter Inc.*, No. CV-18-01714-PHX-DGC, 2019 WL 110967, at *4 (D. Ariz. Jan. 4, 2019) (holding Twitter's forum-selection clause "presumptively valid and enforceable").

Al-Ahmed also argues that transfer should be denied because his "business and contacts are all based in New York," and thus "the far greater number of potential witnesses in this case are in New York."  Opp. at 33.  This argument, however, is directly contradicted by the FAC, which alleges that "a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in California."  FAC ¶ 4.  It is also irrelevant to the Court's analysis.  Where, as here, there is a valid forum-selection clause, the clause should be "given controlling weight in all but the most exceptional cases" and the standard 28 U.S.C. § 1404(a) analysis of private and public interests does not apply.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013).  Indeed, the plaintiff's choice of forum "merits no weight" and a court "should not consider arguments about the parties' private interests."  *Id.* at 63-64.  Therefore, if this matter is not dismissed, it should be transferred to the Northern District of California.

## IV.     CONCLUSION

For the reasons stated here, and in Twitter's opening brief, this Court should dismiss the FAC, or alternatively, transfer this matter to the Northern District of California.

1538383

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated:  December 11, 2020          By:  _____

BENJAMIN BERKOWITZ
KHARI J. TILLERY
ANJALI SRINIVASAN
RYLEE KERCHER OLM
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
bberkowitz@keker.com
ktillery@keker.com
asrinivasan@keker.com
rolm@keker.com

ALICE K. JUMP
REAVIS PAGE JUMP LLP
41 Madison Avenue
41st Floor
New York, NY 10010
Telephone:  212-763-4100
Facsimile:  212-763-4141
ajump@rpjlaw.com

Attorneys for Defendant TWITTER, INC.

1538383