UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALI AL-AHMED,<br><br>      Plaintiff,<br><br> v.<br><br>TWITTER, INC.,<br><br>      Defendant. | Case No. 1:20-cv-04982-VEC |

**DEFENDANT TWITTER, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION REQUESTING JUDICIAL NOTICE REGARDING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, OR <u>ALTERNATIVELY, TO TRANSFER VENUE</u>**

Benjamin Berkowitz
Khari J. Tillery
Anjali Srinivasan
Rylee Kercher Olm
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

Alice K. Jump
REAVIS PAGE JUMP LLP
41 Madison Avenue
41st Floor
New York, NY 10010
Telephone:  212-763-4100
Facsimile:   212-763-4141

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE EXHIBITS OR CONSIDER THE EXHIBITS INTEGRAL TO THE COMPLAINT. ................................1

    A. Exhibits 1 through 4 are integral to Al-Ahmed's FAC and may properly be considered by the Court. ...................................................................................1

    B. Exhibit 5 is accurate, authentic, and integral to Al-Ahmed's FAC. .........................4

    C. Exhibits C and D are webpages properly subject to judicial notice. ........................6

    D. It is undisputed that Exhibit A and Exhibits 6A-6N may be judicially noticed. ....................................................................................................................7

III. CONCLUSION....................................................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abdulaziz v. Twitter, Inc.*,
   No. 3:19-cv-06694-LB, 2020 WL 6947929 (N.D. Cal. Aug. 12, 2020)................................2, 3

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014)..........................6

*Barberan v. Nationpoint*,
   706 F. Supp. 2d 408 (S.D.N.Y. 2010)........................................................................................7

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005).......................................................................................................7

*Canal+ Image UK Ltd. v. Lutvak*,
   773 F. Supp. 2d 419 (S.D.N.Y. 2011)........................................................................................6

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2nd Cir. 2002).....................................................................................................2

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013).......................................................................................................4

*Kaggen v. I.R.S.*,
   71 F.3d 1018 (2d Cir. 1995).......................................................................................................2

*Keithly v. Intelius Inc.*,
   764 F. Supp. 2d 1257 (W.D. Wash. 2011).................................................................................5

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ................................................................................................2, 3

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)...................................................................................................3, 5

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)...................................................................................................4, 5

*Patsy's Italian Rest., Inc. v. Banas*,
   575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011) ...............................6

*Sarmiento v. Sealy, Inc.*,
   367 F. Supp. 3d 1131 (N.D. Cal. 2019) .................................................................................3, 6

1557539

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) ..................................................................................... 4, 7

*SolarCity Corp. v. Salt River Project Agric. Improvement*,
   Case No. CV-15-00374-PHX-DLR, 2015 WL 6503439 (D. Ariz. October 27,
   2015) ............................................................................................................................ 3

*Song Fi, Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ......................................................................... 7

*Starks v. Geico Indem. Co.*,
   Case No. CV-15-5771-MWF (PJW), 2015 WL 12942282 (C.D. Cal. Nov. 10,
   2015) ............................................................................................................................ 2

*U.S. v. Hernandez*,
   45 Fed. App'x. 686 (9th Cir. 2002) ............................................................................. 5

*Wilson v. Kellogg Co.*,
   111 F. Supp. 3d 306 (E.D.N.Y. 2015) ................................................................. 4, 5, 7

*Zam & Zam Super Market, LLC v. Ignite Payments, LLC*,
   Case No. CV 16-6370 (SJF) (AYS), 2017 WL 6729854 (E.D.N.Y. Oct. 31,
   2017), *aff'd*, 736 F. App'x 274 (2d Cir. 2018) ......................................................... 2, 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 6

Fed. R. Evid. 201(b) .............................................................................................................. 6

Fed. R. Evid. 801(d)(2) ......................................................................................................... 6

1557539

I.      **INTRODUCTION**[1]

Defendant Twitter, Inc.'s ("Twitter") opening papers asked the Court to take judicial notice of, or consider as integral to the complaint, the documents attached as Exhibits 1 through 6N to the Declaration of Twitter Employee, ECF No. 56 ("Twitter Employee Decl.") and the documents attached as Exhibits A, C, and D to the Declaration of Anjali Srinivasan, ECF No. 53 ("Srinivasan Decl."), submitted in support of Twitter's Motion to Dismiss, or Alternatively, to Transfer Venue. *See* Twitter's Memorandum of Law in support of Motion Requesting Judicial Notice Regarding Motion to Dismiss, or Alternatively, to Transfer Venue, ECF No. 59 ("RJN").

Plaintiff Ali Al-Ahmed does not dispute that Exhibits 6A-6N and Exhibit A may be judicially noticed for the fact they exist. *See* Plaintiff's Memorandum of Law in opposition to Twitter's Motion Requesting Judicial Notice, ECF No. 63 ("RJN Opp.") at 2. Therefore, the Court can and should take judicial notice of these documents. Al-Ahmed, however, argues that the Court should not take judicial notice of or consider as integral to the complaint Exhibits 1 through 5 and Exhibits C and D. But Al-Ahmed's arguments lack merit and are unpersuasive for the reasons discussed below. Accordingly, Twitter respectfully submits that its Request for Judicial Notice should be granted in full.

II.     **THE COURT SHOULD TAKE JUDICIAL NOTICE OF THE EXHIBITS OR CONSIDER THE EXHIBITS INTEGRAL TO THE COMPLAINT.**

   A.   **Exhibits 1 through 4 are integral to Al-Ahmed's FAC and may properly be considered by the Court.**

Exhibits 1 and 2 are the notifications sent to affected Twitter accountholders via email and in-app notification in December 2015, regarding the potential state-sponsored unauthorized access of their accounts. Twitter Employee Decl. ¶¶ 3-4. Exhibits 3 and 4 are records maintained by Twitter that identify the individuals who were sent the December 2015 notifications, and these exhibits show that Al-Ahmed was sent both the email and in-app notices.

---

[1] Throughout this brief, all emphases within quotations are added and all internal citations are omitted unless otherwise noted.

1

*Id.* ¶¶ 5-6.  Al-Ahmed's argument that Twitter ratified its rogue employees' conduct relies on his allegation that Twitter did not send any such notifications.  *See* First Amended Complaint, ECF No. 7 ("FAC") ¶ 30 ("Plaintiff is informed and believes, and based thereon alleges, that one or more of Twitter's managing agents adopted, ratified or was complicit in this conduct by, *inter alia*, concealing from Plaintiff the fact that Alzabarah and Abouammo, while acting as agents for KSA, had wrongly obtained access to this information.").  Thus, the Court may take notice of the notifications as "integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that documents may be incorporated by reference where "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

Al-Ahmed puts forward assorted, equally weak arguments against consideration of Exhibits 1 through 4.  For instance, Al-Ahmed asserts that he does not rely upon or incorporate these documents by reference in his complaint.  RJN Opp. at 2-3.  But Al-Ahmed's first cause of action, violation of the Stored Communications Act, relies in part on his allegation that Twitter "conceal[ed] from Plaintiff the fact that Alzabarah and Abouammo, while acting as agents for KSA, had wrongly obtained access to this information."  FAC ¶ 30.  Where a plaintiff's claim depends on his or her allegation that no notice was sent, and the defendant provides evidence that such notice did occur, courts have held that such evidence is integral to the complaint.  *See Zam & Zam Super Market, LLC v. Ignite Payments, LLC*, Case No. CV 16-6370 (SJF) (AYS), 2017 WL 6729854, at *10 (E.D.N.Y. Oct. 31, 2017), *aff'd*, 736 F. App'x 274 (2d Cir. 2018); *see also Kaggen v. I.R.S.*, 71 F.3d 1018, 1020 (2d Cir. 1995).[2]  In the parallel action *Abdulaziz v. Twitter,*

---

[2] Al-Ahmed does not even attempt to distinguish this Second Circuit case law cited in Twitter's RJN, nor could he.  Additionally, his argument fares no better under Ninth Circuit case law.  *See, e.g., Knievel*, 393 F.3d at 1076 (incorporating materials that provided important context for a defamation claim, even though the complaint did not reference the materials); *Starks v. Geico Indem. Co.*, Case No. CV-15-5771-MWF (PJW), 2015 WL 12942282, at *2 (C.D. Cal. Nov. 10, 2015) (incorporating notifications by reference because "the notifications submitted by [Geico]

*Inc.*, which is based on the same foreign espionage activities, the district court considered these very exhibits where the plaintiff's Stored Communications Act claim relied in part on his allegation that Twitter did not send him any notifications. Case No. 3:19-cv-06694-LB, 2020 WL 6947929 (N.D. Cal. Aug. 12, 2020), at *7 ("[T]he December 2015 notice defeats any claim that Twitter ratified its employees' conduct, which disposes of the [Stored Communications Act claim and two additional claims].")

Al-Ahmed also asserts that these documents are "self-created," by which he means they were prepared by Twitter, and which he alleges prohibits their consideration. RJN Opp. at 3-4. But his proposed prohibition finds no support in the rules of evidence and, indeed, is contradicted by well-settled case law. *See, e.g.*, *Zam & Zam Super Market, LLC*, 2017 WL 6729854, at *10 (considering declaration drafted by defendants regarding its mailing of a letter to plaintiff); *Knievel*, 393 F.3d at 1076 (considering defendant's web pages). Al-Ahmed misconstrues *SolarCity Corp. v. Salt River Project Agric. Improvement*, Case No. CV-15-00374-PHX-DLR, 2015 WL 6503439, at *4 (D. Ariz. October 27, 2015), where the court declined to take judicial notice of defendant's alleged website postings not solely because the postings were self-created, but because the plaintiff disputed the postings' accuracy and authenticity and there was "no information as to when [the documents] were prepared and when they were posted online." In contrast, Twitter has provided ample detail about its December 11, 2015 notifications and its internal records identifying who was sent the notifications. *See* Twitter Employee Decl. ¶¶ 1-6. Again, these very same documents have already been considered in *Abdulaziz*, 2020 WL 6947929, at n.24 and n.58 (taking notice of the same Exhibits 1 through 4), and there is no genuine dispute as to their authenticity. Al-Ahmed's "bald allegation" that he denies the veracity and authenticity of all disputed exhibits "does not raise an actual dispute as to the document[s'] authenticity." *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1143 (N.D. Cal. 2019); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that district court did not

---

are crucial to Plaintiffs' claims that they never received the notifications").

3

err in considering documents where there was "no *serious* question as to their authenticity"); *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015) (considering document plaintiff alleged to be inauthentic where defendant's declarant had attested to its authenticity under penalty of perjury).

Al-Ahmed's citations to non-binding California state court cases are inapposite for several reasons, including because those cases dealt with the doctrine of judicial notice (not matters integral to the complaint) and because in those cases there existed actual disputes over the interpretation of the documents. *See generally* RJN Opp. at 4 (citing various California state court cases). Because Exhibits 1-4 to the Twitter Employee Declaration are "integral to the complaint," the complaint is "deemed to *include*" these documents and the Court may consider the contents of the documents. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (considering the text of emails deemed "integral" to plaintiff's complaint in evaluating plaintiff's claims); *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 273 (2d Cir. 2013) (deriving facts from complaint, "as supplemented by materials integral to that pleading and matters susceptible to judicial notice").

        **B.**        **Exhibit 5 is accurate, authentic, and integral to Al-Ahmed's FAC.**

Exhibit 5 is an Arabic-language message transmitted by Al-Ahmed from his Twitter account, as well as a certified English translation of the message. Twitter Employee Decl. ¶ 7; *see also* Supplemental Declaration of Twitter Employee in support of Twitter's Motion to Dismiss, or Alternatively, to Transfer Venue ("Supp. Decl. of Twitter Employee") ¶ 4.[3] Exhibit 5 reflects the final incident that led to the suspension of Al-Ahmed's Arabic-language Twitter account. Twitter Employee Decl. ¶ 7; *see also* Supp. Decl. of Twitter Employee ¶ 4. This message is integral to Al-Ahmed's FAC because several of his claims rely on his allegations that his account was suspended due to Twitter's wrongful acts, *see, e.g.*, FAC ¶¶ 22-25, 31, 40, 47,

---

[3] In light of the Court's order granting Twitter's sealing request, *see* ECF No. 49, Twitter refers to the declarant solely as "Twitter Employee," including with respect to the Supplemental Twitter Employee Declaration filed concurrently with Twitter's Reply in Support of Its Motion to Dismiss.

4

49, 83, and he is not allowed to plead around the very message he wrote that led to his suspension. *See, e.g.*, *L-7 Designs, Inc.*, 647 F.3d at 422.

Al-Ahmed argues against consideration of Exhibit 5 primarily by denying the veracity and authenticity of the exhibit. *See* RJN Opp. at 3. But Al-Ahmed's explanations for why this exhibit is inaccurate and inauthentic are implausible and incongruent. *See* RJN Opp. at 3; Al-Ahmed's Declaration in Opposition, ECF No. 62-1 ("Al-Ahmed Declaration") ¶¶ 6-7. For instance, Al-Ahmed claims that he did not draft the message and asserts that Abouammo or Alzabarah may have manipulated his Twitter account to create this message. *See* Al-Ahmed Decl. ¶¶ 5-6. However, Abouammo and Alzabarah were no longer Twitter employees as of December 2015, *see* FAC ¶ 15, and the message shown in Exhibit 5 was transmitted in February 2018, Twitter Employee Decl. ¶ 7, years after the KSA-sponsored espionage alleged in the FAC. Al-Ahmed has alleged no plausible facts or provided any evidence that would support this farfetched theory, and Twitter is aware of no such evidence. *See* Supp. Decl. of Twitter Employee ¶ 4. Al-Ahmed's declaration is also internally inconsistent on this point, later admitting that the message may have indeed been an "obscure, anomalous and/or provoked response," Al-Ahmed Decl. ¶ 6, conflicting with his theory that he did not draft the message.[4]

Al-Ahmed fails to raise any "serious question" as to Exhibit 5's accuracy and authenticity. *Kramer*, 937 F.2d at 774; *see also Wilson*, 111 F. Supp. 3d at 312; *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1261-62 (W.D. Wash. 2011) (holding that "the accuracy and authenticity of the screen shots [were] not reasonably in dispute" because plaintiffs "[did] not . . . present[] any evidence to contradict defendants' representations and [did] not affirmatively identify any discrepancies"). Further, in determining whether to consider an allegedly

---

[4] Al-Ahmed also takes issue with the certified English translation of the message, but he only challenges a few specific words and fails to provide any alternative, certified translation. *See id.* ¶ 7. In the absence of a competing certified translation, Al-Ahmed has no grounds to quibble with the certified translation already provided. *See, e.g.*, *U.S. v. Hernandez*, 45 Fed. App'x. 686, 691 (9th Cir. 2002) (affirming the district court's consideration of a certified translated transcript where defendant objected to the translation as inaccurate but failed to submit his own certified translation).

inauthentic document, courts consider the purpose of the doctrine, which is to prevent plaintiffs from avoiding the gate-keeping function of a Rule 12(b)(6) motion by deliberately omitting information that is fatal to their claims. *See Sarmiento*, 367 F. Supp. 3d at 1143 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); *see also Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 427 (S.D.N.Y. 2011) ("A plaintiff cannot avoid the Court's consideration of a document [on a motion to dismiss] simply by failing to explicitly reference it."). Therefore, the Court may properly consider Exhibit 5 in connection with Twitter's motion to dismiss.[5]

        **C.**        **Exhibits C and D are webpages properly subject to judicial notice.**

Exhibit C is a public Twitter post ("Tweet") made by Al-Ahmed in October 2014 that lists his phone number, and Exhibit D is a publicly available January 2014 press release listing Al-Ahmed's phone number and email address. Srinivasan Decl. ¶¶ 4-5. These exhibits reflect information in the public domain and thus are properly subject to judicial notice. Fed. R. Evid. 201(b); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011). Al-Ahmed does not attempt to distinguish these cases, nor could he. Rather, he argues that the exhibits were not incorporated by reference or relied upon. *First,* contrary to Al-Ahmed's assertion, there is no requirement that exhibits be relied upon or incorporated by reference into the complaint in order to be judicially noticed. Fed. R. Evid. 201(b). And *second*, in any event, the information in the exhibits is indeed integral to Al-Ahmed's invasion of privacy claim because he alleges that the email address and telephone number associated with his Twitter account are "private information" that Twitter "improperly disclosed." FAC ¶¶ 17, 51. To the extent Al-Ahmed intends to claim that Exhibits C and D are inauthentic, *see* RJN Opp. at 3, "the Court is not

---

[5] Al-Ahmed also argues that Exhibit 5 constitutes inadmissible hearsay. RJN Opp. at 3-4. However, this statement is not hearsay because it is offered against Plaintiff and is Plaintiff's own statement. Fed. R. Evid. 801(d)(2). Moreover, Twitter does not ask the Court to consider Exhibit 5 for the truth of the statements contained therein, but merely for the fact that they were made.

6

required to accept Plaintiff['s] objections to the authenticity of publicly filed documents subject to judicial notice[.]" *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 416 (S.D.N.Y. 2010). Accordingly, the Court should take judicial notice of Exhibits C and D to the Srinivasan Declaration.

### D. It is undisputed that Exhibit A and Exhibits 6A-6N may be judicially noticed.

Exhibit A is a copy of the landing page of Al-Ahmed's English-language Twitter account @AliAlAhmed_en. Srinivasan Decl. ¶ 2. Exhibits 6A-6N are Twitter's publicly available Terms of Service in effect from 2009 to the present. Twitter Employee Decl. ¶¶ 8-21. Al-Ahmed does not dispute that Exhibit A and Exhibits 6A-6N may be judicially noticed for the fact they exist. *See* RJN Opp. at 2. And Twitter merely seeks judicial notice of the existence of these documents—including the existence of the language inside these documents. Because Al-Ahmed does not dispute that these documents exist, the Court should take judicial notice of Exhibit A and Exhibits 6A-6N.

In addition to being subject to judicial notice, Exhibits 6A-6N may also be considered by the Court because Twitter's Terms of Service are integral to Al-Ahmed's FAC. *See* FAC ¶¶ 38-40, 70, 81. Courts routinely consider the statements made in a company's Terms of Service at the motion to dismiss stage where plaintiff's claims are premised on those terms. *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Insofar as the complaint relies on the terms of Cablevision's customer agreement . . . we need not accept its description of those terms, but may look to the agreement itself."); *Wilson*, 111 F. Supp. 3d at 312-14 (considering specific terms in Kellogg's Terms and Conditions where integral to plaintiff's claims); *see also Song Fi, Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 880 n.2 (N.D. Cal. 2015). Therefore, the Court may properly consider the complaint to "include" Exhibits 6A-6N. *See Sira*, 380 F.3d at 67.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Twitter's Request for Judicial Notice.

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
|  |  | KEKER, VAN NEST & PETERS LLP |
| Dated: December 11, 2020 | By: | /s/ |
|  |  | BENJAMIN BERKOWITZ |
|  |  | KHARI J. TILLERY |
|  |  | ANJALI SRINIVASAN |
|  |  | RYLEE KERCHER OLM |
|  |  | 633 Battery Street |
|  |  | San Francisco, CA 94111-1809 |
|  |  | Telephone: 415 391 5400 |
|  |  | Facsimile: 415 397 7188 |
|  |  | bberkowitz@keker.com |
|  |  | ktillery@keker.com |
|  |  | asrinivasan@keker.com |
|  |  | rolm@keker.com |
|  |  |  |
|  |  | ALICE K. JUMP |
|  |  | REAVIS PAGE JUMP LLP |
|  |  | 41 Madison Avenue |
|  |  | 41st Floor |
|  |  | New York, NY 10010 |
|  |  | Telephone: 212-763-4100 |
|  |  | Facsimile: 212-763-4141 |
|  |  | ajump@rpjlaw.com |
|  |  |  |
|  |  | Attorneys for Defendant TWITTER, INC. |

1557539