USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/11/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
ALI AL-AHMED,                                                  :
                                                               :
                            Plaintiff,     :
                                                               :     20-CV-4982 (VEC)
                -against-                           :
                                                               :     ORDER & OPINION
TWITTER, INC.,                                                 :
                                                               :
                            Defendant.     :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Ali Al-Ahmed ("Al-Ahmed") sued Twitter, Inc. ("Twitter") for damages resulting from (1) alleged unlawful intrusions into his Twitter account by two now-former Twitter employees and (2) the suspension of his Arabic-language account by Twitter. First Amended Complaint ("FAC"), Dkt. 7 ¶¶ 15–27. Twitter moved to dismiss the complaint pursuant to Rule 12(b)(1) for lack of standing, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim, or in the alternative, to transfer the case to the U.S. District Court for the Northern District of California. Notices of Mot., Dkts. 36, 50. Twitter also moved for judicial notice of certain materials. Notice of Mot., Dkt. 43. Because the Court does not have personal jurisdiction over Twitter, the motion to dismiss is GRANTED, and the motion for judicial notice is DENIED as moot.

## BACKGROUND[1]

       Al-Ahmed is a journalist and dissident from the Kingdom of Saudi Arabia ("the KSA") who has been granted political asylum in the United States. FAC ¶¶ 5, 10. Al-Ahmed contends that he often uses social media to critique the KSA, that he speaks publicly about civil rights

---

[1] The Court accepts all non-conclusory allegations in the complaint as true for purposes of this motion.

issues in the Middle East, and that he has appeared on major U.S. news networks as a guest commentator on such topics. *Id.* ¶¶ 10–13.

From 2014 to 2015, two then-Twitter employees, Ali Hamad Alzabarah and Ahmad Abouammo, unlawfully accessed the Twitter accounts and associated private data of certain Saudi Arabian dissidents. FAC ¶ 15; Mem. of Law, Dkt. 51 at 1. In 2019, Alzabarah and Abouammo were criminally charged in the Northern District of California with acting unlawfully as agents of the KSA while they were employed at Twitter. FAC ¶¶ 15–19. Plaintiff asserts that he was one of the users unlawfully targeted, and that Alzabarah and Abouammo "mined" his account for personal information that could ultimately be used to silence him. *Id.* ¶¶ 15–17. Al-Ahmed claims Alzabarah and Abouammo acted primarily at or near Twitter's headquarters in San Francisco. *See Id.* ¶¶ 4, 15 n.3.

In May 2018, Twitter suspended Plaintiff's Arabic-language Twitter account. *Id.* ¶ 21.[2] Al-Ahmed alleges that the KSA directed agents who were employed by Twitter to suspend his account, and that Twitter denied Plaintiff's appeal for the account to be reinstated because Twitter is beholden to the KSA. *Id.* ¶¶ 7–8, 21–22. Twitter, in turn, contends that Al-Ahmed's account was suspended because he used the account to send harassing private messages to other users. Mem. of Law, Dkt. 51 at 16.

Plaintiff contends that he was harmed by the intrusions into his account and the suspension of his Arabic-language account. He claims that the intrusion damaged him and his followers, who, he claims, have suffered consequences at the hands of the KSA as a result of the breach. FAC ¶¶ 19–20, 24. Al-Ahmed further asserts that he has lost access to the "proprietary list of followers" that were associated with his Arabic-language account and that he has suffered

---

[2]   Al-Ahmed's separate English-language Twitter account remains active. *See* Al-Ahmed Decl., Dkt. 62-1 ¶ 9; Mem. of Law, Dkt. 51 at 1.

2

financial harm as a result. *Id.* ¶¶ 25, 32, 42, 48. He asserts that his followers are important to his career and that his content is important to those who follow him. *Id.* ¶¶ 23, 25.

Al-Ahmed argues that the intrusions into his account and the suspension of his Arab-language account violate the Stored Communications Act, 18. U.S.C. § 2701 *et seq.*, and give rise to various other causes of action. FAC at pp. 10–22.

Twitter moved to dismiss the complaint pursuant to Rule 12(b)(1) for lack of Article III standing, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim, or in the alternative, to transfer this action to the Northern District of California. Notices of Mot., Dkts. 36, 50; Mem. of Law, Dkt. 51.[3] Twitter also moved for judicial notice of certain materials submitted in support of its motion to dismiss. Notice of Mot., Dkt. 43. Al-Ahmed opposed both motions. Resps., Dkts. 61, 63.

---

[3]  Rule 4(B) of the undersigned's Individual Practices in Civil Cases requires that all memoranda of law be double spaced. Twitter's opening and reply briefs used 1.74 spacing and not Microsoft Word's standard double-spacing setting. When proper double spacing is applied, Twitter's briefs exceed the page limits set by the Court. *See* Individual Practice Rule 4(B) (limiting memoranda of law to 25 pages); Endorsement, Dkt. 60 (extending Twitter's reply brief page limit to 20 pages).

 To address Twitter's failure to comply with the Court's rules and orders, the Court ordered Twitter to show cause why its motion should not be stricken from the record, counsel sanctioned, or both. *See* Order to Show Cause, Dkt. 68. In response, Defense counsel asserted that they had interpreted the Court's double-spacing requirement to allow 24-point spacing (double the required 12-point font) and not that the parties must use Microsoft Word's standard double-spacing setting. *See* Show Cause Resp., Dkt. 69 at 1–2. The Court finds it hard to credit that explanation, especially as Defense counsel have properly double-spaced their filings in many of their other cases in the Southern District of New York. *See, e.g.*, Mem. of Law, 17-CV-589, Dkt. 333 (S.D.N.Y. May 15, 2020) (using Microsoft Word's standard double-spacing setting); Reply, 17-CV-589, Dkt. 370 (same); Mem. of Law, 12-CV-2040, Dkt. 23 (same).

 Upon due consideration, the Court will not sanction Defense counsel. This case is being decided on personal jurisdiction grounds, and Twitter's briefing on that issue represents only a small fraction of the overall page count. Accordingly, the Court finds that Twitter's failure to comply with the Court's double-spacing requirement was not unduly prejudicial to Al-Ahmed. Moreover, as this is the first occasion where Defense counsel failed to comply with Court directives, the Court finds that its consideration of sanctions is a sufficient consequence that will — hopefully — ensure that similar misconduct does not reoccur.

**STANDARD OF REVIEW**

When a defendant moves to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and also moves to dismiss on other grounds, the Court usually must consider the Rule 12(b)(1) motion first. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). Here, Twitter has argued that some of Al-Ahmed's claims should be dismissed for lack of subject-matter jurisdiction. Mem. of Law at 8–10 (contending that Al-Ahmed failed to allege that he had standing to pursue claims against Twitter relating to the 2014-2015 intrusions into his account). But a federal court faced with a "straightforward" personal jurisdiction issue may decide the personal jurisdiction question first if resolving that issue terminates the case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). Because this case can be cleanly resolved on personal jurisdiction grounds, the Court refrains from evaluating Twitter's arguments that Al-Ahmed lacks standing to assert certain claims.

When responding to a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). When the motion to dismiss is decided on the basis of the pleadings (rather than on the basis of an evidentiary hearing), the plaintiff need make only a *prima facie* showing that jurisdiction exists. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

Personal jurisdiction over a non-resident defendant in a case involving a federal question is governed by the law of the state in which the court sits and by the limits of due process.[4] *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). Accordingly, the Court must engage in a "two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez &*

---

[4] The Court has federal question jurisdiction over Al-Ahmed's Stored Communications Act claims and supplemental jurisdiction over his state law claims.

*Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999).  The Court first looks to the long-arm statute of New York, the forum state.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  If the exercise of jurisdiction is appropriate under New York's long-arm statute, the Court must then decide whether such an exercise comports with due process; a state may authorize personal jurisdiction over an out-of-state defendant only if "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (alteration in original) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

In deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider materials outside the pleadings.  *See Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).  "The court assumes the verity of the allegations 'to the extent they are uncontroverted by the defendant's affidavits,'" *id.* (quoting *MacDermid*, 702 F.3d at 727), and construes the jurisdictional allegations in the light most favorable to the plaintiff, *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).  The Court need not accept either party's legal conclusions as true nor will it draw "argumentative inferences" in either party's favor.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted).

Personal jurisdiction may be either general or specific.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).  General, or "all-purpose," jurisdiction allows a court to adjudicate any cause of action against the defendant, regardless of where it arose.  *Id.*  Specific jurisdiction, on the other hand, "is available when the cause of action sued upon arises out of the defendant's activities in a state."  *Id.*; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

## DISCUSSION

**I.      Twitter Is Not Subject to General Jurisdiction in New York**

A court in New York may exercise general jurisdiction over an out-of-state defendant if the defendant engages "in 'continuous, permanent, and substantial activity in New York.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)); *see* C.P.L.R. § 301. The Supreme Court in *Daimler* set a "high bar" for finding that the exercise of general jurisdiction over an out-of-state corporation comports with due process. *See Brown*, 814 F.3d at 626–27 (citing *Daimler*, 571 U.S. at 138). An out-of-state corporation is subject to general jurisdiction in a state "only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 139).

Other than in "exceptional case[s]," a corporation is "at home" only in its state of incorporation and in the state of its principal place of business. *Id.* Because a corporation that operates in many states or countries can scarcely be deemed at home in all of them, "when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Brown*, 814 F.3d at 629 (cleaned up).

Plaintiff argues that Twitter's contacts with New York make it at home in the forum, and, therefore, the Court has general jurisdiction over Twitter. Although he recognizes that Twitter is a Delaware corporation with its principal place of business in San Francisco, Plaintiff alleges that Twitter's "second largest corporate headquarters [is] located at 245 West 17th Street, New York, New York [and that] Twitter conducts business throughout the United States, including New

6

York."  FAC ¶ 6.  Additionally, "over ten percent of [Twitter's] employees work in New York."  Al-Ahmed Decl., Dkt. 62-1 ¶ 3.[5]

But simply having a large office and a substantial number of employees in a forum is not enough to establish general jurisdiction.  Because "it is common for corporations to have presences in multiple states . . . general jurisdiction would be quite the *opposite* of 'exceptional' if such contacts were held sufficient to render the corporation 'at home' in the state." *Brown*, 814 F.3d at 630 (emphasis in original).  The Supreme Court's paradigmatic example of the "exceptional case" in which "a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State" was a company that temporarily relocated its business to the forum state during wartime such that the forum state became the center of the corporation's activities.  *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).  Here, Al-Ahmed does not allege that the New York office acts as "a surrogate for the place of incorporation or head office," *Daimler*, 571 U.S. at 130 n.8 (citation omitted), nor does he make any other allegation from which the Court could infer that New York is the center of Twitter's activities or that it is otherwise "at home" in New York.  In short, Twitter is not subject to general jurisdiction in New York.

**II.    Twitter Is Not Subject to Specific Jurisdiction in New York**

To determine whether Twitter is subject to specific jurisdiction in New York, the Court must first assess whether jurisdiction is proper under New York's long-arm statute.  Only if it is does the Court need to "analyze whether personal jurisdiction comports with the Due Process

---

[5]    The Court considers Al-Ahmed's declaration, which was attached as an exhibit to his opposition brief, because in deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider materials outside the pleadings.  *See Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

Clause." *Chloé*, 616 F.3d at 164.  Al-Ahmed asserts that New York has long-arm jurisdiction pursuant to C.P.L.R. § 302(a)(1) or C.P.L.R. § 302(a)(3).  Resp., Dkt. 61 at 3 (citing both provisions).  Because Al-Ahmed has not satisfied the requirements of either provision, the Court lacks specific jurisdiction over Twitter.

### A.      C.P.L.R. § 302(a)(1)

Pursuant to C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state."  C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)).

Al-Ahmed has pled adequately that Twitter conducts business in New York.  He has alleged that Twitter has a large office in New York, *see* Al-Ahmed Decl. ¶ 3, and that it transacts business in New York by maintaining a web presence and generating revenue through advertisements that target New Yorkers, Resp., Dkt. 61 at 2–3.  Advertisements are sufficient to show that the defendant conducts business in the forum state "*if* the advertisements are supplemented by business transactions occurring in the state . . . or . . . [are] accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." *Virgin Enters. Ltd. v. Virgin Eyes LAC*, 08-CV-8564, 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) (citation omitted) (emphasis in original).  Because Twitter engages in business transactions out of its New York office, its New York-based advertisements are supplemented by that additional in-state conduct.

Al-Ahmed has failed, however, to meet the requirements of the second prong of section 302(a)(1), which requires him to show that his claims arise from Twitter's business activity in New York.[6] "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up). Al-Ahmed recognizes that a "substantial part of the acts and omissions giving rise to the claims asserted herein occurred in California," FAC ¶ 4, but argues that Twitter generates revenue when New York-based users of its website click on personalized advertisements. Al-Ahmed Decl. ¶¶ 3–4; Resp., Dkt. 61 at 2–4.

Accepting as true that Twitter generates revenue when New Yorkers engage with advertisements on their Twitter accounts, there is, nonetheless, no "articulable nexus" or "substantial relationship" between Twitter's New York-based advertisements and Al-Ahmed's claims in this lawsuit. All of Al-Ahmed's claims arise from one of two alleged events: the incursions into his account by two then-Twitter employees and the suspension of his Arabic-language account. FAC ¶¶ 15–23. With respect to the incursions, Al-Ahmed acknowledges that they lack a New York connection. *See* Resp., Dkt. 61 at 3 ("Defendant's interception, review, theft, scanning, collection, storage, and dissemination of Plaintiff's private messages, confidential/privileged sources, list of followers and data for Defendant's own financial and/or otherwise nefarious benefit to its KSA benefactor, are torts committed *outside the state*.")

---

[6]  Al-Ahmed relies on *Bochan v. La Fontaine*, 68 F. Supp. 2d 692 (E.D. Va. 1999), to support his contention that "an entity that utilizes a website to make sales to its customers in a different state can thereby become subject to the jurisdiction of that state's courts." Resp., Dkt. 61 at 1. Not only is that case irrelevant because it is based on Virginia's long-arm statute, not New York's, it also concerns an action in which there was a much stronger connection between the claims asserted and the in-state conduct. *See Bochan*, 68 F. Supp. 2d at 695, 702 (involving claims for libel arising out of messages sent by defendants that were accessed by Virginian users and detailed Virginia-based activities carried out by Virginian residents). Here, Al-Ahmed has not shown that his claims against Twitter are connected in any way to Twitter's New York-based conduct.

(emphasis added). Because Al-Ahmed has not alleged any activity that occurred in New York related to the alleged incursions, he cannot show that he has satisfied the requirements of section 302(a)(1) with respect to claims based on the incursions.

Al-Ahmed alleges that Twitter's New York-based advertising serves as the required nexus for his claims that derive from the suspension of his Arabic-language Twitter account. *See* Resp., Dkt. 61 at 2–3. Al-Ahmed asserts that when he tweeted from New York on his Arabic-language account, he received targeted advertising for New York-based products and services. *Id.* at 2–3, 2 n.1. But "[t]o establish personal jurisdiction under section 302(a)(1) . . . the claim asserted must arise from that business activity." *Eades*, 799 F.3d at 168 (citation omitted). Al-Ahmed has not shown — and cannot show — that his claims related to the suspension of his account arise from or are related to Twitter's presentation of advertisements for New York-based products and services to him (or to anyone else).

Because Al-Ahmed has not demonstrated that claims relating to the suspension of his Arabic-language account arise from Twitter's business conduct in New York, he has not satisfied the requirements of C.P.L.R. § 302(a)(1).[7] For that reason, C.P.L.R § 302(a)(1) does not provide a basis for personal jurisdiction.

### B.  C.P.L.R. § 302(a)(3)

Al-Ahmed also argues that C.P.L.R. § 302(a)(3) of New York's long-arm statute confers personal jurisdiction over Twitter in this action. Section 302(a)(3) provides long-arm jurisdiction against a non-domiciliary who commits a tortious act outside of New York that

---

[7] Al-Ahmed further cites *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997), to support his argument that he has satisfied the requirements of C.P.L.R. § 302(a)(1). Resp., Dkt. 61 at 3. In *PDK Labs*, the Second Circuit found that the claim at issue, a declaratory judgment action seeking "a declaration that Friedlander lacks standing to bring false advertising claims against PDK," arose out of Friedlander's New York Agent's "persistent campaign . . . to secure PDK's investment," including through actions that took place in New York. *Id.* at 1109–10. Al-Ahmed alleges no equivalent facts that would permit the Court to infer that his causes of action arose out of Twitter's New York-based activity.

causes injury inside New York if the non-domiciliary (a) regularly does business in New York, engages in any persistent course of conduct in New York, or derives substantial revenue from goods used or consumed or services rendered in New York, or (b) expects or should reasonably expect the tortious act to have consequences in New York and derives substantial revenue from interstate or international commerce. Thus, for section 302(a)(3) to apply, "(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York." *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 325–26 (S.D.N.Y. 2013).[8]

Al-Ahmed has alleged adequately that the intrusions into his account occurred in California. *See* Resp., Dkt. 61 at 3; FAC ¶ 15 n.3. And although Al-Ahmed does not actually allege this, the Court will assume that Twitter made or implemented the decision to suspend his Arabic-language account from outside New York. *See* FAC ¶ 4 (noting that "a substantial part of the acts and omissions giving rise to the claims asserted here in occurred in California"). With respect to the second prong, that the cause of actions must arise from the tortious act, the Court concludes that all of Al-Ahmed's causes of action, although not all are torts, arise either from the alleged intrusions into his account or the suspension of his account. *See Id.* at p. 3 (noting the "facts in common to all causes of action").

While Plaintiff has, therefore, satisfied the first two prongs, he has not satisfied the third prong, namely that the intrusions or the suspension caused injury to a person or property within New York.

---

[8] Al-Ahmed argues that he has satisfied § 302(a)(3) because the facts in his case are readily distinguishable from the facts of cases found not to satisfy § 302(a)(3). But the distinguishable cases he cites are not helpful to him because they involve a clause of § 302(a)(3) that is not at issue in this case. *See* Resp., Dkt. 61 at 1–2 (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (dismissing on personal jurisdiction grounds because the plaintiff had not alleged that defendant derived substantial revenues from interstate commerce); *Hearst Corp. v. Goldberger*, No. 96-CV-3620, 1997 WL 97097, at *15 (S.D.N.Y. Feb. 26, 1997) (same)). Moreover, whether Twitter derives substantial revenue from interstate commerce is not in contention in this case.

### 1. 2014-2015 Intrusions

Al-Ahmed has asserted a number of claims arising out of the alleged intrusions into his accounts. FAC ¶¶ 15–20. Al-Ahmed argues that "the Court must accept as true Plaintiff's allegations that by engaging in [the alleged intrusions] the Defendant caused damage to Plaintiff in New York as a significant portion of Plaintiff's business arises from and occurs in New York." Resp., Dkt. 61 at 3. But that allegation is conclusory; Plaintiff pleads no facts that would allow the Court to plausibly infer that the intrusions led to Plaintiff losing New York-based business.[9] Al-Ahmed does not allege that information taken during the intrusions was leaked, leading to a loss of business or that any current or prospective business partners became aware that his account had been breached and for that reason quit or refrained from doing business with him. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 677 (2d Cir. 2013) (holding that courts need not consider conclusory, non-specific allegations made to support personal jurisdiction); *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998) (same). Because Al-Ahmed has not pled facts that show how the intrusions caused him to lose business or otherwise be harmed in New York, he has not satisfied the requirements of C.P.L.R. § 302(a)(3).

Al-Ahmed further asserts that Twitter's actions "pose a serious threat to his personal safety." Resp., Dkt. 61 at 4. But here too his allegations are conclusory. He alleges no facts that show that his safety is or ever has been at risk nor, more specifically, facts that show his safety is at risk when he is in New York.[10] Al-Ahmed's allegations about purported injuries suffered by his Twitter followers lack both a New York connection and non-conclusory allegations linking

---

9      Al-Ahmed's statement that "Defendant also must have recognized that in committing the [intrusions], it could do significant damage to Plaintiff's business . . .," *see* Resp., Dkt. 61 at 4, is also conclusory.

10      The FAC does not disclose in what state Al-Ahmed resides. *See* FAC ¶ 5 (Al-Ahmed resides in the United States).

those injuries to the intrusions into his account. Al-Ahmed notes that Abdullah al-Hamid, a Saudi dissident and follower of his account, "was jailed and ultimately died in custody." FAC ¶ 20. But al-Hamid's injury occurred in Saudi Arabia, not in New York. Additionally, it appears unlikely that al-Hamid's injury was connected to alleged 2014-2015 intrusions inasmuch as al-Hamid was arrested and jailed in 2013. FAC ¶ 20 n.6 (citing a media article that notes that al-Hamid was arrested in 2013). In short, Al-Ahmed has made no non-conclusory factual allegations that would allow the Court to infer that any risk to him or his followers has manifested itself in New York.

Because Al-Ahmed has not adequately alleged that the intrusions into his Twitter account caused harm in New York, C.P.L.R. § 302(a)(3) does not provide a basis for personal jurisdiction over claims related to the intrusions.

### 2. 2018 Account Suspension

Al-Ahmed also argues that Twitter's suspension of his Arabic-language account caused him to lose business and networking opportunities. *See* Al-Ahmed Decl. ¶ 3; FAC ¶¶ 43–49. He states that "as a journalist and writer[,] a majority of [his] business partners, business prospects and livelihood are derived from New York-based businesses" and that "when [he has] Tweeted from New York City that [he] would be appearing at a New York-based network, or after doing such an interview [he would] Tweet[] a recap or link to said interview, it was a given that it would be picked up by New York-based print media and New York-based media outlets, as well as the New York City-based Reuters or Associated Press." Al-Ahmed Decl. ¶ 3. He emphasizes that New York is "the heart of social and news media." *Id.* Al-Ahmed connects the suspension of his Arabic-language Twitter account to the loss of business opportunities by claiming that "his expansive list of Twitter followers" on his Arabic-language account "earned him credibility, career nods and income" because of the "huge number of persons interested in unvarnished

coverage of KSA activities provided from a pro-democracy and pro-human rights vantage point."  FAC ¶ 23.

Plaintiff's allegation that the suspension of his Arabic-language Twitter account caused him to lose paid opportunities to appear on various media outlets in New York is conclusory. Al-Ahmed alleges no facts suggesting that any New York-based media outlets were even aware of his Arabic-language Twitter presence, let alone that they quit doing business with him because that account was suspended.  *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 744 (2d Cir. 2020) (finding plaintiff's allegations conclusory because they did not "indicate *how* the Defendants' actions caused [plaintiff] to lose those New York-based participants") (emphasis in original).

In addition to the lack of specificity in Plaintiff's allegations, the Court finds the alleged connection between the suspension of the Arabic-language Twitter account and the loss of New York-based business opportunities to be implausible; of the 12 media outlets that Plaintiff mentions, only one — Al Jazeera — appears to cater to an Arabic-speaking audience.  FAC ¶ 13. The remaining outlets, ranging from CNN and Fox News to the Washington Post and the Associated Press, are English-language outlets with English-speaking audiences.   Because only Al-Ahmed's Arabic-language Twitter account, not his English-language Twitter account, was suspended, without any factual allegations to connect the suspension to the loss of New York-based media opportunities, Al-Ahmed has not made anything close to a *prima facie* showing that the suspension of his Arabic-language account caused him injury in New York.

In short, Al-Ahmed has not adequately alleged that Twitter's actions led to injuries in New York and therefore C.P.L.R. § 302(a)(3) does not provide a basis for personal jurisdiction over claims related to the suspension.[11]

### C. Due Process

Even if Al-Ahmed could somehow shoehorn this case into either provision of C.P.L.R. § 302(a), exercising jurisdiction in this case would run afoul of due process protections. There is simply no "meaningful connection" in this case between New York and Twitter's "suit-related conduct." *Karoon v. Credit Suisse Grp. AG*, No. 15-CV-4643, 2016 WL 815278, at *4 (S.D.N.Y. Feb. 29, 2016); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").[12] Accordingly, even if New York's long-arm statute would permit the Court to exercise jurisdiction, due process would prevent it.

---

[11] Because Al-Ahmed has not adequately alleged that Twitter's actions caused injuries in New York, the Court declines to consider whether the remaining requirements of C.P.L.R. § 302(a)(3), including whether Twitter "should reasonably [have] expect[ed] the act[s] to have consequences in the state," have been satisfied. *See* C.P.L.R. § 302(a)(3)(ii).

[12] Al-Ahmed argues that "it does not offend due process to require Defendant to defend it actions in a New York courtroom." Resp., Dkt. 61 at 4. In support, he cites three inapposite cases in which the defendant's suit-related conduct had a substantial connection to the forum state. *See Rubin v. City of New York, New York*, No. 06-CV-6524, 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007) (finding that Rubin's counterfeit merchandise using New York City trademarks was sold to New Yorkers over the internet); *Nat'l Football League v. Miller*, No. 99-CV-11846, 2000 WL 335566, *2 (S.D.N.Y. Mar. 30, 2000) (finding that defendant used plaintiff's trademarks on advertisements targeting New Yorkers); *Bochan*, 68 F. Supp. 2d at 702 (finding that the alleged defamation concerned activities that had taken place in Virginia). Unlike in the cases he cites, Al-Ahmed has not alleged any facts that would allow the Court to infer that there is a connection between Twitter's New York-based advertisements and Plaintiff's causes of action.

## CONCLUSION

For the reasons discussed above, Twitter's motion to dismiss for lack of personal jurisdiction is GRANTED.  Because the Court did not rely on the materials that Twitter contends are subject to judicial notice, Twitter's motion for judicial notice is DENIED as moot.

The Clerk of Court is respectfully directed to terminate all open motions, to cancel all deadlines, and to close this case.

**SO ORDERED.**

Date:  August 11, 2021  　　　　　　　　　　　　　　　　　　VALERIE CAPRONI
　　　　New York, New York  　　　　　　　　　　　　　　United States District Judge